GOODMAN et al. v. LINETZKY.

(Supreme Court, Appellate Term. November 29, 1907.)

1. BROKERS—ACTIONS FOR COMMISSIONS—EVIDENCE—OTHER TRANSACTION.
　　In an action by real estate brokers for a commission for negotiating an exchange of defendant's property, which defendant refused to carry out, a receipt given by one of the plaintiffs to defendant for a commission paid him by defendant for effecting a subsequent exchange of the same property with another purchaser is inadmissible, because foreign to the issues.

2. TRIAL—INSTRUCTIONS—SUFFICIENCY.
　　In an action on an agreement of defendant and one S. to pay plaintiff a certain commission for negotiating an exchange of their properties, which agreement provided for payment of the commissions on both sides if either party should refuse to carry out the exchange contract, and it appeared that defendant had defaulted, although S. was ready, able, and willing to perform, it was error to charge that, if there was a breach or alleged breach by defendant of the agreement to exchange, plaintiffs had a cause of action against S. for his proportion of the commission, since, as he was ready, able, and willing to carry out the contract, he was not liable for commissions in the absence of the agreement alleged.
　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 596.]

3. SAME.
　　For the same reason it was error to charge that, irrespective of the agreement as to payment of the commissions, plaintiffs had a cause of action against S. for his proportion of the commissions.
　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 596.]

Appeal from City Court of New York, Trial Term.

Action by Tobias Goodman and another against Harris Linetzky. From a judgment for defendant, and an order denying a new trial, plaintiffs appeal. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Feltenstein & Rosenstein (Moses Feltenstein, of counsel), for appellants.

John L. Bernstein, for respondent.

ERLANGER, J. The defendant was awarded a verdict, which is challenged by the plaintiffs upon the ground of errors of law committed by the trial court in the admission of evidence over and against their objection and exception, and, further, because of certain instructions to the jury in respect to a collateral issue which was in no way involved in the action. The plaintiffs contend that both the admission of the proof and the charge to the jury was so clearly erroneous as to call for a reversal of the judgment. We think the position taken is in all respects sound, and that there must be a new trial. The facts are as follows:

Plaintiffs claim that they were employed by the defendant either to sell or exchange a piece of real estate owned by him, and that pursuant to such employment they procured one Siegel, who was willing to exchange a parcel of real estate which he owned for the piece owned by the defendant. After Siegel was found the fact was communicated to the defendant, and both Siegel and the defendant examined the respective parcels to be exchanged before they personally met. On October 1, 1906, all parties were present at the office of the plaintiff Goodman, and the particulars of the exchange, with price and terms, were prepared on one of the forms of Goodman; the defendant signing the memorandum containing the terms of Siegel's property, and Siegel signing the memorandum containing the terms of the defendant's property. These memoranda were thereupon delivered to the parties in interest. After the parties were introduced the negotiations were opened by the manager of Goodman, who is alleged to have said to the contracting parties:

"Gentlemen, we came here for the purpose of a deal, making an exchange of the two properties, and before I enter into any negotiations I want it strictly understood that my commission is 1 per cent., and I want it further understood, if we do come to any agreement and one backs out, that the other must pay commission for both, as I have been fooled in these deals before, and I know what they are."

Thereupon the defendant is alleged to have replied:

"If I make a deal, I am not going to back out. I make it, or don't make it."

And Mr. Siegel is alleged to have assented to those terms. After this conversation the particulars referred to were signed and interchanged. The following day, October 2, 1906, was fixed to close the contract; but the defendant failed to appear, nor did he at any time thereafter carry out the terms of the compact. On behalf of plaintiffs both Peck and Siegel testified to the foregoing.

The defendant and his son denied that any agreement concerning commissions was made. The defendant testified that, when he was requested to sign the memorandum referred to, he refused so to do,

and the son testified that he signed his father's name thereto, because the manager of the plaintiff Goodman said:

" 'What are you afraid to sign? This is the particulars of the house. There is no specified terms; nothing—simply the particulars. What are you afraid to sign for?' And I went to work and signed 'H. Linetzky.' "

During the cross-examination of the plaintiff Peck it was developed that after the transaction failed he found another owner of real estate who exchanged a piece of property owned by him for the property in question owned by the defendant, for which he (Peck) received a commission and gave the following receipt:

"New York, October 22, 1906.

"I, the undersigned, hereby acknowledge the receipt of seventy-five ($75) dollars from Harris Linetzky in full for all commissions due me in the exchange of premises 962–964–966 Washington avenue, by Harris Linetzky and Samuel Wormser, and I hereby represent that I am the only broker who procured the said exchange.          L. Peck."

The witness admitted the payment, and also his signature. Whereupon the paper was offered in evidence and read to the jury. Due objection was made to its admission, which was overruled, and an exception was taken. We think the admission of this receipt cannot be justified upon any principle in the law. It had absolutely nothing to do with the issue, near or remote, and its only possible effect was to mislead the jury. The paper on its face shows an entirely different purchaser, and for aught we know, from the amount of the commission, entirely different terms. If the contract upon which this action is based was made, plaintiffs were entitled to recover, notwithstanding that one of them subsequently produced another purchaser and effected an exchange of defendant's property, for which a commission was paid by him. If it be true that the defendant defaulted as charged, either or both of the plaintiffs could thereafter deal with him with regard to the same property upon the same or other terms, and, if a new purchaser was found, the acceptance of a commission on the subsequent transaction would not impair their right to recover for prior commissions earned, unless the claim was released or discharged by them.

The defendant, not content with the warning which the objection and exception gave to him concerning the receipt, went further, and requested the court to charge the jury on a question that was clearly collateral to the issue. The court had instructed the jury that if a special contract was made, whereby the defendant agreed to pay the entire commission of $610, and they believed the plaintiffs' witnesses in that regard, the plaintiffs were entitled to a verdict for that sum. On the other hand, if they found that no such contract was made, their verdict must be for the defendant. This charge stated concisely the question which the jury was to determine. At the close of the charge the court, upon defendant's request, instructed the jury:

"That if, from the evidence, there was a breach or alleged breach of the contract in behalf of the defendant to exchange the property, that then and in that event the plaintiff had a proper cause of action for $410 against Mr. Siegel; in other words, if there was an alleged breach by this defendant of the exchange contract, and no special contract as alleged was made, that the plaintiffs still have a cause of action against Mr. Siegel for $410."

The defendant thereupon requested the court to further charge:

"That, irrespective of the agreement, the plaintiffs had a cause of action against Mr. Siegel for $410, or the amount of his commissions."

The court so charged. To both of these instructions plaintiffs excepted. Both instructions were clearly error. Siegel had testified for the plaintiffs that he was ready, able, and willing to make the exchange; that he assented to the proposition that the party defaulting was to pay the total commission of $610; and that the defendant refused to appear at the appointed time and place to complete the contract of exchange. Upon what theory plaintiffs could recover from Siegel, if the special contract had not been made, does not appear. Plaintiffs proved that the special contract was made. That excludes the hypothesis of any other contract or obligation thereunder. If the special contract was not made, then there was no liability on the part of the defendant, and necessarily a verdict for the defendant freed Siegel at the same time. This must logically follow from the contention of the parties. The court in its main charge was right. If the later instructions supplanted those first given, then the charge, as we have seen, was wrong. In no aspect of the case, as it was presented upon the trial, could Siegel be held liable to plaintiffs for $410, irrespective of the agreement made with them. The jury under the last instructions found for the defendant. This was a natural result, for they must needs have reasoned that by the defendant's success Siegel's liability still remained.

The judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.